# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SECTRA COMMUNICATIONS AB,<br><br>  Plaintiff,<br><br>v.<br><br>FORTINET, INC.<br><br>  Defendant. | Civil Action No. 2:26-cv-00175<br><br>Jury Trial Demanded |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Sectra Communications AB files this Complaint against Fortinet, Inc. for infringement of U.S. Patent No. 7,797,437 (the "'437 patent" or the "asserted patent").

## THE PARTIES

1. Plaintiff Sectra Communications AB ("Sectra") is a corporation organized and existing under the laws of Sweden, with its principal place of business at Teknikringen 20, SE-583 30 Linköping, Sweden. Sectra is a pioneer in the fields of medical technology and encrypted communication systems. Sectra develops cutting-edge solutions in the expanding niche segments of medical technology, IT, and cybersecurity.

2. Defendant Fortinet, Inc. ("Fortinet") is a Delaware corporation headquartered at 909 Kifer Road, Sunnyvale, California 94086. Fortinet has a regular and established place of business in this District at 6735 Salt Cedar Way, Frisco, Texas 75034. Fortinet may be served with process through its registered agent, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

## JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*. This Court's jurisdiction over this action is proper under the above-referenced statutes, including 35 U.S.C. § 271, *et seq*., 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).

4. This Court has personal jurisdiction over Fortinet because, among other things, Fortinet does business in this State by, among other things, "recruit[ing] Texas residents, directly or through an intermediary located in this State, for employment inside or outside this state." Tex. Civ. Prac. & Rem. Code § 17.042(3). For instance, Fortinet has multiple job openings in Texas:[1]



---

[1] https://edel.fa.us2.oraclecloud.com/hcmUI/CandidateExperience/en/sites/CX_2001/jobs?lastSelectedFacet=LOCATIONS&location=TX%2C+United+States&locationId=300000003028044&locationLevel=state&mode=location&selectedLocationsFacet=300000003028044&sortBy=POSTING_DATES_DESC (last accessed March 2, 2026); https://www.linkedin.com/jobs/search/?currentJobId=4370856191&f_C=6460%2C1374832&geoId=102748797&origin=JOB_SEARCH_PAGE_LOCATION_AUTOCOMPLETE&refresh=true (last accessed March 2, 2026).



5. Further, according to its LinkedIn account, Fortinet employs over 108 people in Richardson, Frisco, Plano, and Allen, Texas, all within this District:[2]



---

[2] https://www.linkedin.com/company/fortinet/people/?facetGeoRegion=102164100%2C105918502%2C100517351%2C103312651 (last accessed March 2, 2026).

6. Further still, this Court has personal jurisdiction over Fortinet because Fortinet has engaged, and continues to engage, in continuous, systematic, and substantial activities within this State, including the substantial marketing and sale of products and services within this State and this District. Indeed, this Court has personal jurisdiction over Fortinet because Fortinet has committed acts giving rise to Sectra's claims for patent infringement within and directed to this District, has derived substantial revenue from its products and services provided to individuals and entities in this State and this District, and maintains regular and established places of business in this District, including at least its brick-and-mortar location in Frisco.[3]



7. Additionally, according to the Collin County Central Appraisal District website, Fortinet owns another location in this District at 1500 E Plano Pkwy, Plano, Texas 75074.[4]

---

[3] https://www.fortinet.com/corporate/about-us/global-offices (last accessed March 2, 2026).
[4] https://esearch.collincad.org/ (last accessed March 2, 2026)



8. Relative to patent infringement, Fortinet has committed and continues to commit acts in violation of 35 U.S.C. § 271, including using, and inducing others to use, infringing products, systems, and/or services in this State, including this District, and otherwise engaging in infringing conduct within and directed at, or from, this District. Such products, systems, and/or services (collectively, the "Accused Instrumentalities") include FortiClient, FortiClient EMS, FortiClient Cloud, FortiSASE, FortiGate/FortiOS, FortiGate Cloud, FortiGate-as-a-Service, FortiGate Public Cloud, FortiGate Private Cloud, and any other platform or service provided or used by Fortinet that includes VPN, ZTNA, or similar functionality. The Accused Instrumentalities have been, and continue to be, used in this District and distributed to and throughout this District at least in connection with Fortinet's website.

9. Fortinet's infringing activities have caused harm to Sectra in this District. Fortinet and/or its partners distribute the Accused Instrumentalities within this District, and on information and belief, Fortinet, its partners, and/or their customers use the Accused Instrumentalities in this District in an infringing manner. For example, Fortinet, its partners, and/or their customers (induced by Fortinet) implement and exert control over the Accused Instrumentalities via cloud-based and on-premises solutions that utilize computers and/or servers located in this District.

Fortinet and/or its partners provide the Accused Instrumentalities (and services therewith) to customers in this District, and Fortinet (and Fortinet's customers) establish and manage secure, persistent, and authenticated network sessions facilitated by the Accused Instrumentalities in this District, whether via Fortinet's implementations of the Accused Instrumentalities on behalf of its customers or via its customers' use of the Accused Instrumentalities provided to them by Fortinet. These are purposeful acts and transactions in this State and this District such that Fortinet reasonably should know, and expect that, it could be haled into this Court.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Fortinet has regular and established places of business in Frisco and Plano, Texas, which are in this District. Venue is further proper in this District because Fortinet has directly infringed and/or induced the infringement of others, including its partners and/or customers, in this District. As set out above, Fortinet has at least distributed the Accused Instrumentalities in this District and has used the Accused Instrumentalities in an infringing manner in this District. And Fortinet's customers and end-users have used and continue to use the Accused Instrumentalities in an infringing manner in this District. These infringements by Fortinet's customers and end users were, and continue to be, induced by Fortinet (as set out further below).

## BACKGROUND

11. Sectra's flagship line of products is its "Tiger" ecosystem, or "Tiger Telephones." These products feature top-level encryption capable of withstanding eavesdropping and hacking attempts, allowing government defense agencies, for instance, to freely transmit classified information. In or around 2010, the Tiger Telephone faced a number of technical issues related to session persistence and network handover, and the future of the product line was uncertain. During this time, Sectra became aware of Columbitech AB's patented technology that enables handovers

7

between heterogenous communication networks (i.e., the '437 patent). Ultimately, Sectra licensed the asserted patent from Columbitech and incorporated the technology into its offerings, saving the entire Tiger ecosystem. Today, the Tiger Telephone is used by the Dutch Ministries, Norwegian Armed Forces, Swedish Defense, NATO, and the Council of European Union.

12. Sectra acquired Columbitech and all of its assets in early 2019, including all rights, title, and interest in the '437 patent. Sectra is the exclusive owner of all rights, title, and interest in the '437 patent and has the right to bring this suit to recover damages for any future, current, or past infringements.

## THE PATENT-IN-SUIT

13. The '437 patent is entitled, "Method for Handover Between Heterogeneous Communications Networks." The '437 patent lawfully issued on September 14, 2010 and stems from U.S. Patent Application No. 10/432,547, filed on November 3, 2003, which, in turn, stems from PCT Application No. PCT/SE01/02612, filed on November 26, 2001. A copy of the '437 patent is attached hereto as Exhibit 1. The inventors of the '437 patent are Torbjorn Hovmark and Lars Resenius. The patent was originally assigned to Columbitech AB.

14. The claims of the '437 patent are directed to patent-eligible subject matter under 35 U.S.C. § 101. They are not directed to abstract ideas, and the technologies covered by the claims consist of ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional. The claims of the '437 patent are directed to specific technological advancements in methods for maintaining communication between devices when switching between heterogeneous communications networks with different network characteristics.

15. The specification of the '437 patent discloses shortcomings in the prior art and then explains, in detail, the technical way the claimed inventions resolve or overcome those shortcomings. For example, the '437 patent explains that problems arise with data communications when a first device (e.g., a mobile phone) becomes geographically mobile. '437 patent, 1:65-67. The '437 patent notes that communication "locks to the use of the communications technology afforded by the communications network" (e.g., cellular or Wi-Fi). *Id*. at 2:2-5. Additionally, the software used in the mobile device is not always adapted to account for the fact that the unit is mobile (versus being stationary with a fixed, wired connection to the Internet). *Id*. at 2:6-7.

16. The '437 patent explains that when the first unit is mobile, it will have a plurality of communications links, each having its own IP address. If the first unit moves and the first link becomes unavailable, then the second unit must use the other communications link; otherwise, communications will fail. In the prior art, the second unit would do this by addressing the packets to the second IP address of the first unit. The '437 patent elucidates the issue with this approach: "[I]t is problematic for the second unit to be aware that the first unit has switched to communications links and to know the new IP address that shall now be used." *Id*. at 2:12-26 (emphasis added).

17. Stated more simply, when the first unit (e.g., an iPhone running a text messaging app) switches its IP connection from Wi-Fi to cellular (e.g., because the Wi-Fi network is out of range), the remote server (e.g., text messaging server) is not aware the switch occurred, so it does not know to start communicating to the new IP address associated with the first unit (e.g., iPhone's cellular Internet connection). That means the remote server will keep sending messages (e.g., text messages intended for the iPhone) to an IP address that no longer works (e.g., the Wi-Fi address of the iPhone). Worse, even if the remote server knew the switch occurred, it would not know how

to address packets (e.g., packets containing text messages) to the first unit (e.g., iPhone) using the new cellular IP address of the first unit because the server would not know the IP address currently being used.

18. In addition to the IP address issues, the '437 patent teaches that when the TCP protocol is used on top of the IP protocol, and a handover to a network with different characteristics (e.g., different bandwidth or round-trip times) occurs, it is "difficult for the TCP to update its estimate of the mean round-trip time and the standard deviation thereof" and "it may take a long time for the TCP protocol to adapt to the characteristic of the second network." *Id*. at 2:27-37. This leads to "[m]any unnecessary retransmissions or unnecessarily prolonged time-outs." *Id*.

19. The '437 patent also notes that a switching of the network communication link can cause problems with security. For example, security is usually coupled to the communications link. If the communications link changes, the IP address changes, and the security mechanisms for the new communications link can cause communications to be denied. The '437 patent thus teaches that re-authentication over the new link would be required in prior art systems. *Id*. at 2:38-45.

20. Having identified numerous difficulties resulting from the mobile device switching from one communications link to another, the '437 patent points out that various attempts have been made to allow handovers and discusses the shortcomings of each methodology. *Id*. at 2:51-4:21. For example, the specification explains that Mobile-IP resolved some IP-address-related problems but did not solve the TCP protocol problem and, moreover, resulted in poorer performance due to additional data being added to each IP packet and delaying communication. *Id*. at 3:20-42. As another example, the patent explains that IPSec, while often used with Mobile-IP to solve security problems, also requires the transmission of extra data with each IP packet, resulting in considerably impaired performance. *Id*. at 3:43-58. Other prior art solutions involved

changes to the TCP protocol, which would require changes to the TCP standard that would take a very long time to implement in existing computer systems. *Id*. at 4:1-10.

21. To solve these technical problems, the '437 patent claims a specific technical solution involving a method in which a first unit includes a first session layer, a first protocol stack, one or more communications hardware, and one or more drive routines belonging to said first communications hardware; and in which a second unit includes a second session layer, a second protocol stack, and one or more second communications hardware. *Id*. at 13:42-14:26. According to the '437 patent, the first and second session layers can ensure that "traffic belonging to respective sockets in each of the first software components is corresponded by traffic intended for the second software components and belonging to a unique socket in one of the second software components, and vice versa." *Id*. at 5:1-6. When the first unit switches from communications networks, the first session layer maintains communication via a selection of appropriate hardware and drive routines. *Id*. at 5:7-26. The first and second session layers maintain a first identity for the second unit and a second identity for the first unit, wherein these identities are not changed when switching between communication networks. *Id*. at 6:5-13.

22. Such a technical solution is embodied, for example, in claim 1 of the '437 patent:

A method of maintaining communication between a first unit and a second unit,

wherein said ***first unit is comprised of a geographically mobile unit*** and includes a ***first protocol stack*** adapted to act between a first communications hardware used for communication via a first communications network and one or more first software components, and

wherein said *second unit* includes *a second protocol stack* adapted to act between a second communications hardware used for communication via a second communications network and one or more second software components,

the method comprising the steps of:

*providing said first unit with a first session layer which is adapted to act as an interface between said first protocol stack and said first software components*;

*providing said second unit with a second session layer which is adapted to act as an interface between said second protocol stack and said second software components*;

causing said *first session layer to indicate a first identity corresponding to said second unit and said second software components*;

causing said *second session layer to indicate a second identity corresponding to said first unit and said first software components*;

*causing said first and said second session layers to use a common session protocol to ensure that traffic belonging to different first sockets in said first software components are directed by traffic intended for said second software components to different second sockets in said second software components uniquely corresponding to said different first sockets, and that traffic belonging to different second sockets in said second software components are directed by traffic intended for said first software components to different first sockets in said first software components uniquely corresponding to said different second sockets*;

>   *providing said first unit* with one or more first communications hardware *with associated drive routines adapted to different communications networks*;
>
>   *in the event of said first unit switching from said first communications network to a third communications network, causing said first session layer to maintain said communication* between said first unit and said second unit *by selecting necessary first communications hardware and drive routines for said third communications network*; and
>
>   *causing said second session layer to retain said second identity during the switching* of said first unit from said first communications network to said third communications network.

(emphasis added).

23.     This solution embodied by the claims of the '437 patent, including claim 1, provides the numerous technical improvements over the prior art network communications methods/processes discussed above. Thus, the claims of the '437 patent are directed to specific improvements in computer functionalities and not abstract ideas. The claims of the '437 patent encompass a technology-based solution to problems unique to network communications and are therefore patent eligible.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,797,437

24.     This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

25.     Sectra is the owner of the '437 patent with all substantial rights, including the exclusive right to enforce, sue, and recover damages for past, present, and future infringements.

26. The '437 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

*Direct Infringement (35 U.S.C. § 271(a))*

27. Fortinet has directly infringed, and continues to directly infringe, one or more claims of the '437 patent in this District and elsewhere in Texas and the United States.

28. To this end, Fortinet has infringed and continues to infringe, either by itself or via an agent, at least claims 1-21 of the '437 patent by, among other things, using the Accused Instrumentalities in ways that practice such claims.

29. For example, Fortinet uses the Accused Instrumentalities in infringing ways as detailed in Exhibit 2. Fortinet uses the Accused Instrumentalities for itself and also deploys the Accused Instrumentalities to establish and manage secure, persistent, and authenticated network sessions for its customers, partners and end users.

*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

30. In addition and/or in the alternative to its direct infringements, Fortinet has indirectly infringed and continues to indirectly infringe one or more claims of the '437 patent by knowingly and intentionally inducing direct infringement by its customers, partners, and end users.

31. At a minimum, Fortinet has knowledge of the '437 patent and its infringements since being served with this Complaint. Since receiving notice of the '437 patent and its infringement thereof, Fortinet has specifically intended, and continues to specifically intend, for persons (such as Fortinet's customers, partners, and end users) to use the Accused Instrumentalities in ways that infringe the '437 patent, including at least claims 1-21. Fortinet knew or should have known that its actions have induced, and continue to induce, such infringements.

32. Fortinet provides the Accused Instrumentalities to its customers:[5]





---

[5] https://www.fortinet.com/customers (last accessed March 2, 2026).

15

33.     Fortinet instructs and encourages its customers, partners and end users to use the Accused Instrumentalities in ways that infringe the '437 patent. For example, Fortinet's website includes explicit instructions on how to implement and operate each Accused Instrumentality in an infringing manner: [6]



---

[6] https://docs.fortinet.com/ (last accessed March 2, 2026);
https://docs.fortinet.com/product/fortisase (last accessed March 2, 2026);
https://docs.fortinet.com/product/forticlient/7.4 (last accessed March 2, 2026);
https://docs.fortinet.com/product/fortigate/7.6 (last accessed March 2, 2026).







34. Other exemplary instructions and documentation that explain how to make and use the Accused Instrumentalities in an infringing manner are set out in Exhibit 2.

*Damages*

35. Sectra has been damaged as a result of Fortinet's infringing conduct described in this Count. Fortinet is, thus, liable to Sectra in an amount that adequately compensates it for Fortinet's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

36. Despite having knowledge of the '437 patent, and knowledge that it is directly and/or indirectly infringing claims of the '437 patent, Fortinet has nevertheless continued its infringing conduct in an egregious manner. On information and belief, Fortinet has known of the

'437 patent and its scope, yet has continually created, used, and sold the Accused Instrumentalities. At the very least, Fortinet has been willfully blind to the '437 patent and its application to the Accused Instrumentalities. For at least these reasons, Fortinet's infringing activities have been, and continue to be, willful, wanton, and deliberate in disregard of Sectra's rights with respect to the '437 patent, justifying enhanced damages under 35 U.S.C. § 284.

37.     Sectra's claims do not have damages limited by 35 U.S.C. § 287. The patent claims at issue are method claims.

## DEMAND FOR A JURY TRIAL

Sectra demands trial by jury on all issues triable of right pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Sectra respectfully requests that this Court enter judgment in its favor and grant the following relief:

(i) Judgment and Order that Fortinet has directly and/or indirectly infringed one or more claims of the '437 patent;

(ii) Judgment and Order that Fortinet must pay Sectra past, present and future damages under 35 U.S.C. § 284, including supplemental damages arising from any continuing, post-verdict infringement for the time between trial and entry of the final judgment, together with an accounting, as needed;

(iii) Judgment and Order that Fortinet must pay Sectra reasonable ongoing royalties on a go-forward basis after final judgment;

(iv) Judgment and Order that Fortinet's infringement of the '437 patent has been willful and that the Court award treble damages pursuant to 35 U.S.C. § 284;

(v) Judgment and Order that Fortinet must pay Sectra pre-judgment and post-judgment interest on damages awarded;

(vi) Judgment and Order that Fortinet must pay Sectra's allowable costs;

(vii) Judgment and Order that the Court find this case exceptional under the provisions of 35 U.S.C. § 285 and order Fortinet to pay Sectra's attorneys' fees, accordingly; and

(viii) Such other and further relief as the Court may deem just and proper.

Dated: March 3, 2026

Respectfully submitted,

/s/*Edward R. Nelson III*
Edward R. Nelson III
State Bar No. 00797142
ed@nelbum.com
Brent N. Bumgardner
State Bar No. 00795272
brent@nelbum.com
Christopher G. Granaghan
State Bar No. 24078585
chris@nelbum.com
Carder W. Brooks
State Bar No. 24105536
carder@nelbum.com
Jinming Zhang
Virginia Bar No. 96210
jinming@nelbum.com
**NELSON BUMGARDNER CONROY PC**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111

**COUNSEL FOR PLAINTIFF
SECTRA COMMUNICATIONS AB**